```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CAROL DaCOSTA, WAYNE COOPER, M.D.,           MEMORANDUM AND ORDER
DANA DiCocco, and MELANIE GREEN,             10-CV-720 (JS)(ARL)
individually and on behalf of all
others similarly situated,

                    Plaintiffs,

        -against-

THE PRUDENTIAL INSURANCE COMPANY OF
AMERICA,

                    Defendant.
----------------------------------------X
APPEARANCES
For Plaintiffs:       Gregory Michael Dell, Esq.
                      Leonard Feuer, Esq.
                      Rachel Alters, Esq.
                      Dell & Schaefer PA
                      2404 Hollywood Blvd.
                      Hollywood, FL 33020

                      Gregory Lance Denes, Esq.
                      Gregory L. Denes PA
                      300 Mercury Road
                      North Palm Beach, FL 33408

For Defendant:        Gary S. Tell, Esq.
                      Micah W.J. Smith, Esq.
                      Theresa S. Gee, Esq.
                      O'Melveny & Myers LLP
                      1625 Eye St. NW
                      Washington, DC 20006

                      Jeffrey I. Kohn, Esq.
                      O'Melveny & Myers LLP
                      Times Square Tower
                      7 Times Square
                      New York, NY 10036
```

SEYBERT, District Judge:

On February 18, 2010, Plaintiffs filed a putative class action Complaint against Defendant, alleging violations of the Employment Retirement Income Security Act ("ERISA"). Defendant has moved to dismiss. For the following reasons, that motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

### I. Summary

This is an ERISA case concerning what impact, if any, ERISA has on "voluntary appeals" that an insurer conducts after denying an insured's initial ERISA-mandated appeal. The parties agree that ERISA does not require insurers to provide or conduct voluntary appeals. Plaintiffs contend, however, that if an insurer chooses to provide voluntary appeals, these appeals must fully comply with ERISA's rules and regulations. Defendant disagrees.

### II. Factual Allegations

Defendant insured Plaintiffs under various group long-term disability policies. At one point, Defendant provided Plaintiffs Carol DaCosta, Dana DiCocco, and Melanie Green with disability benefits, but eventually terminated those benefits after finding that these Plaintiffs were no longer disabled. Defendant denied Plaintiff Wayne Cooper's benefits application, and never provided him with benefits.

Each Plaintiff commenced an administrative appeal of Defendant's decision to terminate or deny benefits. In each case, Defendant denied the appeal. In denying the appeal, Defendant informed Plaintiffs that they could "again appeal this decision to Prudential's Appeals Review Unit for a final decision." (Kohn Aff. Ex. 1-4.[1]) Defendant also informed Plaintiffs that "this second appeal is voluntary," and that, "[s]ince you have now completed the first level of appeal, you may file a lawsuit under [ERISA]." (Id.) In addition, Defendant told Plaintiffs that, although "a second appeal will not affect your rights to sue under ERISA," "[y]ou are entitled to receive, upon request, sufficient information to make a decision about filing this appeal." (Id.) Finally, Defendant informed Plaintiffs that "[y]ou are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim." (Id.)

After receiving this letter, Ms. DeCosta requested a complete copy of her claim file. Mr. Cooper, Ms. DeCocco, and Ms. Green requested both a copy of his/her claim file, and

---

[1] The letters that Defendant sent to Plaintiffs informing them about the denial of their initial appeals are integral to the Complaint, and arguably incorporated by reference within it. (See Compl. ¶¶ 9, 17, 28, 37, 42.) Thus, the Court may consider these letters even on a motion to dismiss.

3

"sufficient information to make a decision about filing" the second appeal. In each case, Plaintiffs allege that Defendant failed to provide the requested information. Among other things, Plaintiffs allege that Defendant failed to inform them that it would assign the same claims administrator and physicians who handled the initial appeal to handle the voluntary appeal. (Compl. ¶ 64.) In addition, Plaintiffs allege that Defendant failed to inform them that the voluntary appeal was not de novo and, in fact, lacked any "hard and fast rules."[2] (Id.)

Plaintiffs contend that, in so doing, Defendant violated ERISA in two ways. First, Plaintiffs claim, Defendant procedurally flouted ERISA by not providing "sufficient information" about the voluntary appeal process, including the "internal rules, guidelines and protocols" it uses. (Compl. ¶¶ 95(e), 96.) Second, Plaintiffs contend, Defendant's voluntary appeals substantively violated ERISA because they were not "full and fair review[s]," as required by 29 U.S.C. § 1133(c) and 29 C.F.R. § 2560.503-1. (Compl. ¶ 97.) Based on these alleged violations, Plaintiffs seek relief under both ERISA and a breach of fiduciary duty theory. Plaintiffs demand damages, equitable

---

[2] The "no hard and fast rules" quote allegedly comes from an internal e-mail that Defendant sent to its claims administrators. (Compl. ¶ 59.)

4

relief, and injunctive relief, in addition to attorneys' fees and costs.

## DISCUSSION

I. <u>Standard of Review on a Motion to Dismiss</u>

In deciding F<small>ED</small>. R. C<small>IV</small>. P. 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles," <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009). First, although the Court accepts all factual allegations as true, and draws all reasonable inferences in the plaintiff's favor, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Harris</u>, 572 F.3d at 72 (quoting <u>Ashcroft</u>); <u>Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Management LLC</u>, 595 F.3d 86, 91 (2d Cir. 2010). Second, only complaints that state a "plausible claim for relief" can survive Rule 12(b)(6). <u>Id.</u> Determining whether a complaint does so is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>

II. <u>Plaintiffs' "Sufficient Information" Claims</u>

Plaintiffs first challenge Defendant's alleged failure to provide "sufficient information" concerning the voluntary

5

appeal process. See 29 C.F.R. 2560.503-1(c)(3)(iv). Defendant contends that Plaintiffs lack standing to complain about the information it provided, and further contends that Plaintiffs' "sufficient information" claims fail on the merits. The Court considers each, in turn.

A. <u>Standing</u>

Defendant contends that Plaintiffs' "sufficient information" claims assert, at best, two cognizable interests: (1) an interest in not submitting to the voluntary appeals process; and (2) an interest in ultimately prevailing on their benefits claims. According to Defendant, neither interest suffices to create constitutional standing. The Court disagrees with Defendant's argument.

An ERISA plaintiff "must establish both statutory standing and constitutional standing, meaning the plan participant must identify a statutory endorsement of the action and assert a constitutionally sufficient injury arising from the breach of a statutorily imposed duty." <u>Kendall v. Employees Retirement Plan of Avon Products</u>, 561 F.3d 112, 118 (2d Cir. 2009). "Plan participants have statutory standing to bring a civil action to: (A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions

6

of this subchapter or the terms of the plan." Id. (quoting 29 U.S.C. § 1132(a)(3)). Constitutional standing requires: (1) the plaintiff to have suffered an injury-in-fact; (2) a causal connection between the injury and the conduct at issue; and (3) an injury likely to be redressed by a favorable decision. Id. at 118. However, in dicta, the Second Circuit has suggested that "a plan participant may have Article III standing to obtain injunctive relief related to ERISA's disclosure and fiduciary duty requirements without a showing of individual harm to the participant." Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 199 (2d Cir. 2005) (citing Horvath v. Keystone Health Plan East, Inc., 333 F.3d 450, 456-57 (3d Cir.2003)); see also Kendall, 561 F.3d at 119 (recognizing a looser standing requirement for injunctive relief). And, interpreting Central States, at least two Second Circuit district courts have held that a plaintiff seeking injunctive relief under ERISA need not demonstrate any actual harm. See Faber v. Met. Life Ins. Co., 08-CV-10588, 2009 WL 3415369, at *4 (S.D.N.Y. 2009); American Medical Ass'n v. United HealthCare Corp., 08-CV-2800, 2007 WL 1771498, at *19 (S.D.N.Y. 2007).

Here, Plaintiffs allege that Defendant failed comply with ERISA's requirement that it provide "sufficient information" concerning the voluntary appeal process. (See Pl.

7

Opp. Br. at 10) (citing 29 C.F.R. 2560.503-1(c)(3)(iv)). In so doing, Plaintiffs seek to "enjoin an[] act or practice which violates" ERISA, and thus have statutory standing. See 29 U.S.C. § 1133(a)(3)(A). And that alleged "deprivation of a right" (i.e., the right to obtain "sufficient information") likewise creates constitutional standing even without a showing of individualized harm, at least for injunctive relief purposes. See Kendall, 561 F.3d at 120; see also Faber, 2009 WL 3415369 at *4; American Medical Ass'n, 2007 WL 1771498 at *19. Given that Plaintiffs "seek only injunctive relief, not disgorgement or restitution" in connection with Defendant's alleged failure to provide "sufficient information" concerning the voluntary appeal process, Plaintiffs have standing to pursue these claims. (Pl. Opp. Br. at 15.)

Defendant raises one more standing-related argument. Specifically, Defendant contends that Plaintiffs lack standing because the injunctive relief they seek is prospective, and cannot remedy the legal deprivation they already incurred (i.e., because Plaintiffs have already pursued voluntary appeals, they no longer need "sufficient information" about whether to exercise this option). Thus, Defendant argues, injunctive relief cannot alleviate any redressable injury, such as a "threatened violation." (Def. Reply Br. at 7.) But, at least at this stage, Defendant's argument fails. Accepting the

Complaint's allegations at true and drawing reasonable inferences therefrom, one of the Plaintiffs, Ms. DiCocco, remains Defendant's insured today. (See Compl. ¶¶ 22-33) (stating that Ms. DiCocco "became insured" under Defendant's policy, and never indicating that Ms. DiCocco dropped this policy). Thus, even under Defendant's theory, Ms. DiCocco has standing at the pleading stage, because there is always the threat that Ms. DiCocco will suffer another claimed disability, resulting in her wanting "sufficient information" about pursuing a voluntary appeal. And Ms. DiCocco's standing suffices for Plaintiffs to obtain the injunctive relief they seek. See Massachusetts v. E.P.A., 549 U.S. 497, 518, 127 S.Ct. 1438, 127 S.Ct. 1438 (2007) (only one plaintiff needs to have standing to permit court to hear claims).

B. The Merits

Defendant also argues that Plaintiffs' "sufficient information" claims fail on the merits, because they "substantially complied" with ERISA's regulations. Again, the Court disagrees.

ERISA requires an insurer who offers voluntary appeals to provide "sufficient information relating to the voluntary level of appeal to enable the claimant to make an informed judgment about whether to submit a benefit dispute to the voluntary level of appeal." 29 C.F.R. 2560.503-1(c)(3)(iv).

9

This information should "include[e] a statement that the decision of a claimant as to whether or not to submit a benefit dispute to the voluntary level of appeal will have no effect on the claimant's rights to any other benefits under the plan and information about the applicable rules, the claimant's right to representation, the process for selecting the decisionmaker, and the circumstances, if any, that may affect the impartiality of the decisionmaker, such as any financial or personal interests in the result or any past or present relationship with any party to the review process." Id.

Here, Defendant did sufficiently inform Plaintiffs that pursuing a voluntary appeal would not affect their "rights to any other benefits under the plan." (Compl. Ex. D at 3.) But, based on the Complaint's allegations, attached exhibits, and integral documents, there is nothing to suggest that Defendant provided <u>any</u> information concerning, among other things, "the applicable rules, the claimant's right to representation, the process for selecting the decisionmaker, and the circumstances, if any, that may affect the impartiality of the decisionmaker." 29 C.F.R. 2560.503-1(c)(3)(iv). True, as Defendant argues, the letters that denied the original appeal set forth that Plaintiffs should "forward your [voluntary] appeal" to the claims administrator who handled the mandatory appeal. But nothing in Defendant's letters suggests that this

10

claims administrator would perform any more than the ministerial task of accepting the voluntary appeal papers. Indeed, each of Defendant's letters indicated that the appeal would go to Defendant's "Appeals Review Unit," not the claims administrator assigned to the mandatory appeal. (Kohn Aff. Exs. 1-4.) More to the point, Defendant's letters and supplemental information packet do not tell Plaintiffs that, in processing voluntary appeals, Defendant: (1) typically selected the same decisionmaker who handled the original appeal (even though, presumably, that decisionmaker might not be fully impartial); (2) typically assigned the same physicians who handled the original appeal; and (3) applied no "hard and fast" "applicable rules," except that the review was not de novo. (Compl. ¶¶ 59, 65.) Consequently, the Court finds that Plaintiffs have sufficiently stated a claim that Defendant failed to provide "sufficient information" concerning the voluntary appeals process.[3]

---

[3] The parties spend a significant amount of time arguing about whether the Second Circuit has adopted the "substantial compliance" doctrine. The Court need not reach this issue. Based on the Complaint's allegations, attached exhibits, and integral documents, Plaintiffs have sufficiently alleged that Defendant did not substantially comply with 29 C.F.R. 2560.503-1(c)(3)(iv). Indeed, other than informing Plaintiffs that a voluntary appeal would not affect their right to other benefits, it is unclear, at best, if Defendant provided any of the information set forth in § 2560.503-1(c)(3)(iv). And providing only a small portion of the called for information is not "substantial compliance."

III. <u>Plaintiffs' "Full and Fair Review" Claims</u>

Plaintiffs' claims concerning the substance of Defendant's voluntary appeal procedures do not fare as well. Plaintiffs' Complaint contends that ERISA requires a "full and fair review" on any appeal the insurer undertakes, regardless of whether ERISA mandated the appeal or not. In seeking dismissal, Defendant argues that ERISA's regulations cover only mandated appeals, not voluntary appeals that an insurer chooses to offer. The Court agrees with Defendant.

True, to their credit, Plaintiffs have located some authority supporting their position on voluntary appeals. (<u>See</u> Pl. Br. at 7-10.) (citing <u>Cook v. New York Times Co. Long-Term Disability Plan</u>, 02-CV-9154, 2004 WL 203111, at *16 (S.D.N.Y. 2004) and <u>Ward v. Life Ins. Co. of North America</u>, 08-CV-675, 2009 WL 2740202, *6 (M.D.N.C. 2009)). But <u>Cook</u> is distinguishable, and the Court does not find <u>Ward</u> persuasive.

With respect to <u>Cook</u>, the decision does contain some dicta supporting Plaintiffs' position. <u>See</u> 2004 WL 203111, at *16 ("It could be argued that ERISA's regulations should not apply to decisions on review after the first appeal. Defendant however, does not raise this argument, and even if it did, it would not be persuasive.") But <u>Cook</u> depended on very different facts. In <u>Cook</u>, the Court found that the insurer had failed to offer an ERISA-compliant "full and fair" review on the initial

12

ERISA-mandated appeal. Id. The insurer then tried to cure that deficiency by offering additional voluntary appeals that were equally non-compliant. Given these facts, the Court held that "a second appeal that does nothing to cure the procedural deficiencies of the first will not constitute substantial compliance merely by virtue of its existence. Because the notice of denial on plaintiff's second appeal again failed to provide the required information, the denial of the third appeal equally violates ERISA." Id. In short, the Court in Cook held that the second and third voluntary appeals fell under ERISA because the insurer never conducted an ERISA-compliant appeal in the first place, so it still needed to meet its initial ERISA burden. Here, however, Plaintiffs do not dispute that Defendant's mandatory review was "full and fair," and otherwise complied with ERISA. Thus, unlike in Cook, Plaintiffs seek a second "full and fair" review.[4]

Ward is more on point. In Ward, the Court interpreted 29 U.S.C. § 1133(2) as requiring a "full and fair review" even

---

[4] By rough analogy, a litigant cannot obtain summary judgment through hearsay, regardless of whether one, two, or numerous witnesses provide the same hearsay testimony. The initial hearsay witness fails to meet the litigant's burden, and subsequent hearsay witnesses are equally insufficient. Conversely, a litigant can sometimes win summary judgment through a single witness who provides admissible and non-contradicted testimony. Once that litigant provides that single witness, there is no obligation to provide a second, third, or fourth witness to provide duplicative admissible testimony about the same event.

13

on voluntary appeals. See 2009 WL 2740202, *6. But the Court does not find this interpretation persuasive.

The Court must "interpret the unambiguous terms of statutes according to their ordinary and plain meaning." U.S. v. Sabhnani, 599 F.3d 215, 255-56 (2d Cir. 2010). Here, 29 U.S.C. § 1133(2) sets forth that an ERISA-covered plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." The operative word is "a," as in "a reasonable opportunity" and "a full and fair review." In plain English, "a" means "one," at least when used to qualify singular nouns such as "opportunity" and "review."[5] When used in this manner, "a" does not mean "every." Thus, the plain reading of § 1133(2) supports that ERISA requires only a single mandatory review -- as both parties, in fact, concede. Conversely, nothing in the text supports that "every" opportunity an insurer affords must be "reasonable," or that "every" review an insurer offers must be "full and fair."

This interpretation of § 1133(b) also comports with the plain meaning of the applicable regulations, which require insurers "to establish and maintain reasonable claims procedures," with respect to "the filing of benefit claims,

---

[5] See http://encarta.msn.com/dictionary_1861582871/a.html (last visited November 10, 2010).

14

notification of benefit determinations, and <u>appeal</u> of adverse benefit determinations." 29 C.F.R. § 2560.503-1(b) (emphasis supplied). Much like the statute, the regulations require "reasonable procedures" only for "appeal," singular, not "appeals," plural.

In addition, one subsection, § 2560.503-1(c)(3), specifically covers voluntary appeals, yet provides no substantive guideline for conducting them. Instead, this subsection provides insureds only with various procedural rights, such as voluntary appeals tolling the statute of limitations, not imposing fees or costs on insureds, and the right to obtain "sufficient information" about the voluntary appeals process. <u>Id.</u> But, unlike subsection (b), this subsection says nothing about insurers needing to employ "reasonable procedures," nor does it require insurers to conduct a "full and fair review." And when the "[regulator] uses certain language in one part of the [regulation] and different language in another, the court assumes different meanings were intended." <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692, 712, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004).

More to the point, in providing examples of "sufficient information," subsection (c)(3)(iv) strongly suggests that "reasonable procedures" and/or a "full and fair review" is not required. For instance, subsection (c)(3)(iv)

15

describes "sufficient information" as including "the circumstances, if any, that may affect the impartiality of the decisionmaker, such as any financial or personal interests in the result or any past or present relationship with any party to the review process." So, by its plain text, the subsection does not ban insurers from assigning a decisionmaker who may be partial to the decision denying benefits. Instead, the subsection only requires insurers to provide information concerning the "circumstances" that might make the decisionmaker less than impartial, suggesting that insurers are perfectly free to appoint anyone they wish, once they comply with this procedural requirement (including, presumably, the person who denied the original appeal). And few would consider a review that lacks an impartial reviewer to be "full and fair."

Finally, public policy also supports Defendant's position. As a general principle, courts are hesitant to impose additional burdens on a party by virtue of that party voluntarily doing more than the law requires. For example, an employer who exceeds the ADEA's requirements in accommodating a disabled employee is not required to continue supplying a more-than-reasonable accommodation, lest employers refrain from doing only the bare minimum out of fear that doing more will impose unnecessary legal burdens. See Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522, 1528 (11th Cir. 1997); Walton v. Mental

16

Health Ass'n of Southeastern Pennsylvania, 168 F.3d 661, 671 (3d Cir. 1999). And this principle applies to ERISA. Among other things, ERISA, and the cases interpreting it, seek to "encourage[] resolution of benefits disputes through internal administrative proceedings rather than costly litigation." Conkright v. Frommert, 130 S.Ct. 1640, 1649, 176 L.Ed.2d 469 (2010). To that end, it makes no sense to discourage ERISA plan providers from offering voluntary appeals, even if those appeals lack ERISA safeguards. Voluntary appeals provide an additional avenue for insureds to seek relief, before turning to slow and expensive litigation. And, because voluntary appeals toll the statute of limitations, they limit the harm that unsuccessful appellants might incur in undertaking them.[6]

Consequently, Defendant's motion to dismiss is GRANTED to the extent that it challenges Plaintiffs' claims concerning how it substantively conducts voluntary reviews.

## CONCLUSION

Defendant's motion to dismiss is GRANTED IN PART AND DENIED IN PART. The Court does not dismiss any cause of action in particular. Instead, the Court dismisses Plaintiffs' claims

---

[6] An insured who pursues an unsuccessful voluntary appeal might suffer some harm. The voluntary appeal might cause the insured to delay filing suit, thereby delaying this suit's resolution. This potential harm could be why the regulations require an insurer to provide "sufficient information" about how the voluntary appeal works.

17

to the extent that they challenge how Defendant substantively conducts voluntary reviews. Plaintiffs' claims are not dismissed to the extent they challenge Defendant's failure to provide "sufficient information" concerning the voluntary appeal process. Because, as Plaintiffs' opposition brief concedes, the "sufficient information" claims seek only injunctive relief, Plaintiffs cannot recover equitable relief or damages with respect to these claims.

SO ORDERED.

_____/s/_____
Joanna Seybert, U.S.D.J.

Dated:   November 12, 2010
         Central Islip, New York